[No. 13790. In Bank. — April 2, 1891.]

PRESTON W. HAYS, APPELLANT, *v.* D. M. GLOSTER ET AL., RESPONDENTS.

CONSTRUCTIVE TRUST — SETTING ASIDE TRANSFER — MENTAL INCOMPETENCY — FRAUD — PROMISES WITH INTENT TO DECEIVE. — A trust in real and personal property may be declared and enforced, where it appears that the property was transferred to the defendant at his solicitation, while the plaintiff's mental condition was such that he was incompetent to transact business, and that he was induced to transfer the property to the defendant by the fraudulent acts and representations of the defendant that he would manage the property and reconvey it to the plaintiff after paying off the plaintiff's debts; that there was no further consideration, and that all the statements and representations made by the defendant were false and fraudulent, and were knowingly made with the intent to deceive and defraud the plaintiff.

ID. — STATUTE OF FRAUDS — PAROL EVIDENCE. — Trusts in real property arising from fraud, actual or constructive, are not within that part of the statute of frauds which requires the trust to be declared by a written instrument; but such trusts arise by operation of law, and may be proved by parol evidence.

ID. — INTENT NOT TO PERFORM. — A promise made without any intention of performing it is fraudulent.

ID. — RESCISSION OF CONTRACT — WEAKNESS OF MIND — INADEQUACY OF CONSIDERATION — UNDUE INFLUENCE. — A contract may be set aside in equity where there is imbecility or weakness of mind arising from old age, sickness, intemperance, or other cause, and plain inadequacy of consideration, or where there is weakness of mind and circumstances of undue influence and advantage.

APPEAL from a judgment of the Superior Court of Modoc County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Spencer & Raker*, and *C. A. Raker*, for Appellant.

The promises and agreements of defendant were made without any intent of performing them. This is a well-recognized species of fraud. (Bigelow on Fraud, ed. 1888, pp. 483, 484; *Sandfoss* v. *Jones*, 35 Cal. 481, 482; Civ. Code, secs. 1572, 2222–2224; *Newell* v. *Newell*, 14 Kan. 202; *Brison* v. *Brison*, 75 Cal. 527; 7 Am. St. Rep. 189; *Newman* v. *Smith*, 77 Cal. 22.) The *gravamen* of plaintiff's complaint is fraud practiced by the defendant in obtaining the transfer of the property, coupled with the additional averment that he has wholly neglected and failed to comply with the terms and conditions upon which the deed and bill of sale were executed. (*Olivas* v. *Olivas*, 61 Cal. 386; *Perry* v. *McHenry*, 13 Ill. 236; *Wheeler* v. *Reynolds*, 66 N. Y. 234; *Levy* v. *Brush*, 45 N. Y. 589; *Burden* v. *Sheridan*, 36 Iowa, 125; 14 Am. Rep. 505; *Cowan* v. *Wheeler*, 25 Me. 267; 43 Am. Dec. 283; *Pulsifer* v. *Paddock*, 43 Kan. 718.) The essence of the fraud is the existence of an intent, at the time of the promise, not to perform it. (*Brison* v. *Brison*, 75 Cal. 527; 7 Am. St. Rep. 189.) If actual fraud existed, the statute of frauds is no defense. (1 Perry on Trusts, 3d ed., secs. 226 et seq.; 2 Story's Eq. Jur., 3d ed., sec. 1531, pp. 857, 858, and notes; 1 Story's Eq. Jur., sec. 156; Bigelow on Fraud, 174–178, 446, 448, et seq.) Plaintiff, relying solely on pretenses of friendship, etc., transferred the property to the defendant, without any consideration whatever. There was a confidential relation existing between the parties. (*Brison* v. *Brison*, 75 Cal. 528; 7 Am. St. Rep. 189; *Broder* v. *Conklin*, 77 Cal. 330; 1 Story's Eq. Jur., secs. 258, 307; 1 Perry on Trusts, 3d ed., secs. 188–190.) The law, from consideration of public policy,

presumes such transactions to have been induced by undue influence. (Civ. Code, sec. 2235; Bigelow on Fraud, ed. 1888, pp. 261, 262; *Huguenin* v. *Basely*, 2 Lead. Cas. Eq. 1156.)

*Goodwin & Jenks*, and *Ewing & Claflin*, for Respondents.

McFARLAND, J.—This action was brought for the purpose of having a trust as to certain real and personal property declared and enforced, and for an accounting, reconveyance, etc. An answer was filed, in which the material averments of the complaint were denied. There was no demurrer to the complaint,—probably because it did not appear that the alleged promises and undertakings of defendant D. M. Gloster, upon which the cause of action is based, were *not* in writing. But at the trial, nearly all the evidence offered by plaintiff was excluded, upon the grounds that the alleged trust was void under the statute of frauds unless in writing; that a written instrument cannot be contradicted or changed by parol evidence; and generally, that the alleged trust could not be proven by parol testimony. A jury had been called to try some of the issues; but as plaintiff, under the rulings of the court, failed to get in any material evidence, the jury was discharged, and the court gave judgment for defendants, from which, and from an order denying a new trial, plaintiff appeals. So that the question presented is practically this: Would the complaint have stated a cause of action if it had appeared on its face that the things averred as the basis of the alleged trust were not evidenced by writings?

It is averred in the complaint (substantially) that on November 23, 1883, plaintiff was, and for a long time previous thereto had been, the owner in fee and in possession of certain described land, which, with the improvements thereon, was of the value of ten thousand dollars; and also a large amount of personal property

on said land, consisting of horses, mules, cattle, hogs, wagons, plows, mowers, thrashing-machine, and other farming implements, grain, hay, bacon, lard, household furniture, and other personal property, of the value of ten thousand dollars; that at said time plaintiff was in very poor health, and in a feeble condition physically and mentally, and that his mind was, and for some time prior thereto had been, so far deranged that he was entirely incompetent to transact any business; and that the defendant D. M. Gloster well knew of plaintiff's said weakness and incompetency. It is further averred that at and before said November 23, 1883, said defendant made frequent visits to plaintiff at his home on said land, and frequently and falsely represented to plaintiff that he was plaintiff's special and warm friend, that plaintiff was being robbed and wronged by others, and that defendant was very anxious to befriend, protect, and aid plaintiff, and to take care of him in his feeble condition; that defendant falsely represented to plaintiff that he was worth one million dollars, and could easily advance money to pay any debts then owing by plaintiff, and would do so if plaintiff would turn over his property to defendant, and requested and persuaded plaintiff to transfer all said real and personal property to defendant, and to let him into possession thereof jointly with plaintiff; that defendant promised and agreed "that if plaintiff would so transfer and let him, said defendant, into the possession of said property, he, the defendant, would protect and take good care of and preserve the said property, and would manage the same for plaintiff, and in plaintiff's interest, and out of the proceeds of said property he would pay plaintiff's debts, and that he would provide plaintiff a pleasant and comfortable home upon said property, and would take good care of the plaintiff in his then feeble condition, and would advance any money necessary for such purposes, and that when he had paid plaintiff's debts, and had so

managed his business affairs as to relieve him from his
then present embarrassments, he would retransfer all of
said property to plaintiff." It is further averred that,
induced solely by said false promises, representations,
and pretenses, "and without any other or further con-
sideration whatever therefor," plaintiff, on said twenty-
third day of November, 1883, executed and delivered to
said defendant D. M. Gloster a deed of conveyance of
said real property, and a bill of sale of all said personal
property, and allowed defendant to take control of the
same, and that defendant thereupon entered upon said
land and took entire charge of all of said real and per-
sonal property; that from said date to the fall of 1887
defendant and plaintiff jointly occupied the dwelling-
house upon said land; and that during said time neither
said defendant nor his family made any effort to make
plaintiff comfortable, or to restore his health, but on the
contrary neglected and ill-treated him, and very poorly
provided him with clothes and food, so that his health
was thereby injured, and his chances for recovery greatly
lessened. It is further averred that defendant after-
wards fraudulently, and in violation of said trust and
confidence, conveyed, without consideration, a part of
said land to his daughter, Mary E. Gloster, and another
part to Henry O'Toole, both of whom are made parties
defendant; that said defendant D. M. Gloster has sold
the principal part of said personal property and con-
verted the proceeds thereof to his own use, and has ap-
portioned to his own use the rents and profits of all said
real and personal property, and has never paid any of
plaintiff's debts; and that he now repudiates said trust
and all said promises, and claims to be the owner of all
said property not yet sold, free of all trust, and is now
holding the same adversely to plaintiff. It is further
averred as follows: "That all the statements and promises
and representations made by the defendant D. M. Gloster
to plaintiff, as set out in the complaint, were false and

fraudulent, and said defendant D. M. Gloster *knew said representations to be false and untrue,* and the same were made by said defendant to plaintiff *with intent to deceive and defraud* said plaintiff, and thereby to obtain possession of plaintiff's property for the sole purpose of defrauding plaintiff thereof," etc. There is an averment that plaintiff did not discover the fraud until within three years before the commencement of the action; and there are also many other averments in detail, of matters not necessary to be here mentioned.

We think that the matters set forth in the complaint, if true, constitute a cause of action, assuming that the alleged undertakings of defendant D. M. Gloster were not in writing. The case is not one to which the rules, that a trust in real property must be in writing, and that a writing cannot be varied by parol evidence, apply. Trusts may be created by writing or " by operation of law " (Civ. Code, sec. 82); and trusts which arise from fraud, either actual or constructive, are not within that part of the statute which requires a trust to be declared by a written instrument. The averment in the complaint last above quoted is, we think, a sufficient statement that the promises alleged to have been made by defendant D. M. Gloster were made without any intention of performance, and therefore there was actual fraud within the meaning of the phrase "a promise made without any intention of performing it," as used in section 1572 of the Civil Code. But if that were not so, we think that the other facts stated show a case of trust arising out of fraud within the authorities of *Broder* v. *Conklin,* 77 Cal. 330; *Brison* v. *Brison,* 75 Cal. 525; 7 Am. St. Rep. 189; *Murray* v. *Drake,* 46 Cal. 645; *Sandfoss* v. *Jones,* 35 Cal. 481; and *Newman* v. *Smith,* 77 Cal. 22. (See also *Humphrey* v. *West,* 40 Mich. 597; *Tracy* v. *Sacket,* 1 Ohio St. 55; 59 Am. Dec. 610; *Reid* v. *Burns,* 13 Ohio St. 49.) In some of the cases above cited, there was a peculiar confidential relation, as that of husband

and wife, parent and child, or attorney and client; but
that was not the fact in all the cases. The case at bar
is very similar to those of *Humphrey* v. *West*, 40 Mich.
597; *Sandfoss* v. *Jones*, 35 Cal. 481; and *Broder* v. *Conk-
lin*, 77 Cal. 330. The alleged mental weakness of plain-
tiff is a matter to be seriously examined. Upon this
subject, the supreme court of Ohio, after a review
and citation of authorities, say as follows: "Those who
from imbecility of mind are incapable of guarding
themselves against fraud and imposition are under the
special protection of the law. The rule to be collected
from all the authorities I take to be this: Where there
is imbecility or weakness of mind arising from old age,
sickness, intemperance, or other cause, and plain inade-
quacy of consideration, or where there is weakness of
mind and circumstances of undue influence and advan-
tage, in either case a contract may be set aside in
equity."

As first above stated, the questions involved in this
case arose on rulings of the court sustaining objec-
tions of defendants to evidence offered by plaintiff. The
statement on motion for a new trial consists mainly of
questions asked by plaintiff of witnesses, objections by
defendants, rulings sustaining the objections, and ex-
ceptions by plaintiff; and of offers by plaintiff to prove
certain facts and objections to such offers sustained. It
would be useless labor to notice all of such rulings in de-
tail. They all seem to have gone upon the theory that
plaintiff was bound by the terms of the deed and bill of
sale, and could not prove the averments of the complaint
by parol evidence. One or two examples of the rulings
will be sufficient. While plaintiff was on the witness
stand, he was asked by his counsel, referring to the time
the deed was made, "What was the matter with your
physical organization,—whether you were sick, weak, or
disabled?" The question was objected to by the defense
as "irrelevant and immaterial," and the objection was

sustained. Counsel for plaintiff then said: "We offer to prove that plaintiff, at the time of the transfer set out in the complaint, was of weak and unsound mind, and incompetent to transact business, on the twenty-third day of November, 1883. We offer to prove that defendant must have known of such mental weakness and sickness, and that he took advantage of such weakness and sickness to persuade plaintiff to such contract set out in the complaint. Objected to as irrelevant and immaterial. Objection sustained. Plaintiff excepts." This ruling was erroneous. Again: "Q. What induced you to make that transfer of property? Objected to as incompetent, immaterial, and irrelevant, it appearing that the transfer was in writing, and expresses the inducements, and it is the best evidence what the inducement was. *The Court:* That brings up the same question; the objection is sustained. Plaintiff excepts." This ruling was erroneous. Again: "Q. State what consideration, if any, you received for turning over that property to defendant Gloster? Objection as irrelevant, immaterial, and incompetent. It is evidenced by the bill of sale itself. It is entirely irrelevant and immaterial whether there was any other consideration outside of the writing; the writing speaks for itself; it is the same thing you have been to work on twenty-four hours. Objection sustained. Plaintiff excepts." These examples show the general nature of the twenty-five specifications of error contained in the statement. Plaintiff sought in various ways, by questions put to witnesses and by offers of proof, to introduce evidence tending to prove the averments of his complaint; but he was prevented by the rulings of the court from doing so. His offers were not objected to because they were in the form of "offers to prove," but because the things offered to be proven were inadmissible. It is possible that some of the evidence offered to be introduced was objectionable under the general rules of evidence; but the main basis of the rulings was, that

parol evidence was not admissible to establish the aver-
ments of the complaint. Therefore it is sufficient for
the guidance of the court below, on another trial, to say,
generally, that plaintiff is entitled to prove (if he can)
the material averments of his complaint,—his mental con-
dition at the time of the transfer, the advantage taken
of his mental weakness by defendant and undue influ-
ence by the latter, the real consideration of the transfer,
the condition of the property, and the circumstances of
the transaction, the alleged fraudulent acts of the defend-
ant before, at the time of, and after the transfer, and
all facts which reasonably tend to establish the alleged
fraudulent acts; and these things may be proven by
parol testimony, subject, of course, to the general rules
of evidence.

For the reasons above given, the judgment and order
appealed from are reversed, and the cause remanded for
a new trial.

DE HAVEN, J., HARRISON, J., PATERSON, J., SHARPSTEIN,
J., and BEATTY, C. J., concurred.