Filed 1/14/13

# IN THE SUPREME COURT OF CALIFORNIA

RIVERISLAND COLD STORAGE,  )
INC., et al.,  )
    )
       Plaintiffs and Appellants,  )
    )          S190581
    )
       v.  )
    )     Ct.App. 5 F058434
FRESNO-MADERA PRODUCTION  )
CREDIT ASSOCIATION,  )      Fresno County
    )   Super. Ct. No. 08CECG01416
       Defendant and Respondent.  )
_____ )

The parol evidence rule protects the integrity of written contracts by making their terms the exclusive evidence of the parties' agreement. However, an established exception to the rule allows a party to present extrinsic evidence to show that the agreement was tainted by fraud. Here, we consider the scope of the fraud exception to the parol evidence rule.

As we discuss below, the fraud exception is a longstanding one, and is usually stated in broad terms. However, in 1935 this court adopted a limitation on the fraud exception: evidence offered to prove fraud "must tend to establish some independent fact or representation, some fraud in the procurement of the instrument or some breach of confidence concerning its use, and not a promise directly at variance with the promise of the writing." (*Bank of America etc. Assn. v. Pendergrass* (1935) 4 Cal.2d 258, 263 (*Pendergrass*).) The *Pendergrass* rule has been criticized but followed by California courts, for the most part, though

1

some have narrowly construed it.  The Court of Appeal in this case adopted such a narrow construction, deciding that evidence of an alleged oral misrepresentation of the written terms themselves is not barred by the *Pendergrass* rule.

Plaintiffs, who prevailed below, not only defend the Court of Appeal's holding but, alternatively, invite us to reconsider *Pendergrass*.  There are good reasons for doing so.  The *Pendergrass* limitation finds no support in the language of the statute codifying the parol evidence rule and the exception for evidence of fraud.  It is difficult to apply.  It conflicts with the doctrine of the Restatements, most treatises, and the majority of our sister-state jurisdictions.  Furthermore, while intended to prevent fraud, the rule established in *Pendergrass* may actually provide a shield for fraudulent conduct.  Finally, *Pendergrass* departed from established California law at the time it was decided, and neither acknowledged nor justified the abrogation.  We now conclude that *Pendergrass* was ill-considered, and should be overruled.

## I.  BACKGROUND

Plaintiffs Lance and Pamela Workman fell behind on their loan payments to defendant Fresno-Madera Production Credit Association (Credit Association or Association).  They restructured their debt in an agreement, dated March 26, 2007, which confirmed outstanding loans with a total delinquency of $776, 380.24.[1]  In the new agreement, the Credit Association promised it would take no enforcement action until July 1, 2007, if the Workmans made specified payments.  As

---

[1]      The Workmans signed individually as borrowers, and on behalf of the Workman Family Living Trust as guarantors.  Lance Workman also signed as president of Riverisland Agribusiness and Riverisland Cold Storage, Inc., corporations designated in the agreement as "borrowers."  Riverisland Cold Storage and the Workman Family Trust are also plaintiffs in this action.  We sometimes refer to plaintiffs collectively as "the Workmans."

additional collateral, the Workmans pledged eight separate parcels of real property. They initialed pages bearing the legal descriptions of these parcels.[2]

The Workmans did not make the required payments. On March 21, 2008, the Credit Association recorded a notice of default. Eventually, the Workmans repaid the loan and the Association dismissed its foreclosure proceedings. The Workmans then filed this action, seeking damages for fraud and negligent misrepresentation, and including causes of action for rescission and reformation of the restructuring agreement. They alleged that the Association's vice president, David Ylarregui, met with them two weeks before the agreement was signed, and told them the Association would extend the loan for two years in exchange for additional collateral consisting of two ranches. The Workmans further claimed that when they signed the agreement Ylarregui assured them its term was two years and the ranches were the only additional security. As noted, the contract actually contemplated only three months of forbearance by the Association, and identified eight parcels as additional collateral. The Workmans did not read the agreement, but simply signed it at the locations tabbed for signature.

The Credit Association moved for summary judgment. It contended the Workmans could not prove their claims because the parol evidence rule barred evidence of any representations contradicting the terms of the written agreement. In opposition, the Workmans argued that Ylarregui's misrepresentations were admissible under the fraud exception to the parol evidence rule. Relying on *Pendergrass*, *supra*, 4 Cal.2d 258, the trial court granted summary judgment,

---

[2]     Through an apparent oversight, their initials appear on only the first, second, and last of the four pages listing the properties in which the Credit Association took a security interest.

3

ruling that the fraud exception does not allow parol evidence of promises at odds with the terms of the written agreement.

The Court of Appeal reversed. It reasoned that *Pendergrass* is limited to cases of promissory fraud. [3] The court considered false statements about the contents of the agreement itself to be factual misrepresentations beyond the scope of the *Pendergrass* rule. We granted the Credit Association's petition for review.

## II. DISCUSSION

A. *The Parol Evidence Rule and the* Pendergrass *Limitation*

The parol evidence rule is codified in Code of Civil Procedure section 1856 and Civil Code section 1625. It provides that when parties enter an integrated written agreement, extrinsic evidence may not be relied upon to alter or add to the terms of the writing.[4] (*Casa Herrera, Inc. v. Beydoun* (2004) 32 Cal.4th 336, 343 (*Casa Herrera*).) "An integrated agreement is a writing or writings constituting a final expression of one or more terms of an agreement." (Rest.2d Contracts, § 209, subd. (1); see *Alling v. Universal Manufacturing Corp.* (1992)

---

[3]    One of the forms of "[a]ctual fraud" is "[a] promise made without any intention of performing it." (Civ. Code, § 1572, subd. 4; see *Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638 ["An action for promissory fraud may lie where a defendant fraudulently induces the plaintiff to enter into a contract"]; 5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 781, pp. 1131-1132.)

[4]    Code of Civil Procedure section 1856, subdivision (a) states: "Terms set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement." Further unspecified statutory references are to the Code of Civil Procedure.

Civil Code section 1625 states: "The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument."

5 Cal.App.4th 1412, 1433.)  There is no dispute in this case that the parties' agreement was integrated.

Although the parol evidence rule results in the exclusion of evidence, it is not a rule of evidence but one of substantive law.  (*Casa Herrera*, *supra*, 32 Cal.4th at p. 343.)  It is founded on the principle that when the parties put all the terms of their agreement in writing, the writing itself becomes the agreement. The written terms supersede statements made during the negotiations.  Extrinsic evidence of the agreement's terms is thus *irrelevant*, and cannot be relied upon. (*Casa Herrera*, at p. 344.)  "[T]he parol evidence rule, unlike the statute of frauds, does not merely serve an evidentiary purpose; it determines the enforceable and incontrovertible terms of an integrated written agreement." (*Id.* at p. 345; cf. *Sterling v. Taylor* (2007) 40 Cal.4th 757, 766 [explaining evidentiary function of statute of frauds].)  The purpose of the rule is to ensure that the parties' final understanding, deliberately expressed in writing, is not subject to change.  (*Casa Herrera*, at p. 345.)

Section 1856, subdivision (f) establishes a broad exception to the operation of the parol evidence rule:  "Where the validity of the agreement is the fact in dispute, this section does not exclude evidence relevant to that issue."  This provision rests on the principle that the parol evidence rule, intended to protect the *terms* of a valid written contract, should not bar evidence challenging the *validity* of the agreement itself.  "Evidence to prove that the instrument is void or voidable for mistake, fraud, duress, undue influence, illegality, alteration, lack of consideration, or another invalidating cause is admissible.  This evidence does not contradict the terms of an effective integration, because it shows that the purported instrument has no legal effect." (2 Witkin, Cal. Evidence (5th ed. 2012) Documentary Evidence, § 97, p. 242; see also *id.*, §§ 66 & 72, pp. 206 & 211.)

The fraud exception is expressly stated in section 1856, subdivision (g): "This section does not exclude other evidence . . . to establish . . . fraud."

Despite the unqualified language of section 1856, which broadly permits evidence relevant to the validity of an agreement and specifically allows evidence of fraud, the *Pendergrass* court decided to impose a limitation on the fraud exception.[5] The facts of *Pendergrass* are similar in certain respects to those here. Borrowers fell behind on their payments. They and the bank executed a new promissory note, which was secured by additional collateral and payable on demand. Soon after it was signed, the bank seized the encumbered property and sued to enforce the note. In defense, the borrowers claimed the bank had promised not to interfere with their farming operations for the remainder of the year, and to take the proceeds of those operations in payment. They alleged that the bank had no intention of performing these promises, but made them for the fraudulent purpose of obtaining the new note and additional collateral. (*Pendergrass*, *supra*, 4 Cal.2d at pp. 259-262.)

The *Pendergrass* court concluded that further proceedings were required to determine whether the lender had pursued the proper form of action. (*Pendergrass*, *supra*, 4 Cal.2d at pp. 262-263.) However, the court also considered whether oral testimony would be admissible to establish the lender's alleged promise not to require payment until the borrowers sold their crops. "This promise is in direct contravention of the unconditional promise contained in the note to pay the money on demand. The question then is: Is such a promise the

_____

[5]    The version of section 1856 in effect at the time of *Pendergrass* was enacted in 1872. That statutory formulation of the parol evidence rule included the terms now found in section 1856, subdivisions (f) and (g). (See Recommendation Relating to Parol Evidence Rule (Nov. 1977) 14 Cal. Law Revision Com. Rep. (1978) p. 147.)

6

subject of parol proof for the purpose of establishing fraud as a defense to the action or by way of cancelling the note, assuming, of course, that it can be properly coupled with proof that it was made without any intention of performing it?" (*Id*. at p. 263.)

"Our conception of the rule which permits parol evidence of fraud to establish the invalidity of the instrument is that it must tend to establish some independent fact or representation, some fraud in the procurement of the instrument or some breach of confidence concerning its use, and not a promise directly at variance with the promise of the writing. We find apt language in *Towner v. Lucas' Exr.* [(1857)] 54 Va. (13 Gratt.) 705, 716, in which to express our conviction: 'It is reasoning in a circle, to argue that fraud is made out, when it is shown by oral testimony that the obligee contemporaneously with the execution of a bond, promised not to enforce it. Such a principle would nullify the rule: for conceding that such an agreement is proved, or any other contradicting the written instrument, the party seeking to enforce the written agreement according to its terms, would always be guilty of fraud. The true question is, Was there any such agreement? And this can only be established by legitimate testimony. For reasons founded in wisdom and to prevent frauds and perjuries, the rule of the common law excludes such oral testimony of the alleged agreement; and as it cannot be proved by legal evidence, the agreement itself in legal contemplation, cannot be regarded as existing in fact.' " (*Pendergrass*, *supra*, 4 Cal.2d at pp. 263-264.)

B. *Reactions to* Pendergrass

Despite some criticism, *Pendergrass* has survived for over 75 years and the Courts of Appeal have followed it, albeit with varying degrees of fidelity. (See *Casa Herrera*, *supra*, 32 Cal.4th at p. 346; *Duncan v. The McCaffrey Group, Inc.* (2011) 200 Cal.App.4th 346, 369-377 [reviewing cases]; *Price v. Wells Fargo Bank* (1989) 213 Cal.App.3d 465, 484-485 [discussing criticism]; Sweet,

7

*Promissory Fraud and the Parol Evidence Rule* (1961) 49 Cal. L.Rev. 877 (Sweet) [criticizing *Pendergrass*].)  Until now, this court has not revisited the *Pendergrass* rule.**6**

The primary ground of attack on *Pendergrass* has been that it is inconsistent with the principle, reflected in the terms of section 1856, that a contract may be invalidated by a showing of fraud.  (*Coast Bank v. Holmes* (1971) 19 Cal.App.3d 581, 591; Sweet, *supra*, 49 Cal. L.Rev. at p. 887; Note, *Parol Evidence:  Admissibility to Show That a Promise Was Made Without Intention to Perform It* (1950) 38 Cal. L.Rev. 535, 538 (Note); see also *Pacific State Bank v. Greene* (2003) 110 Cal.App.4th 375, 390, 392.)  Evidence is deemed admissible for the purpose of proving fraud, without restriction, in the Restatements.  (Rest.2d Contracts, § 214, subd. (d), and coms. c & d, pp. 134-135; see also *id.*, § 166, com. c, p. 452; Rest.2d Torts, § 530, com. c, p. 65.)  Most of the treatises agree that evidence of fraud is not affected by the parol evidence rule.  (E.g., 6 Corbin on Contracts (rev. ed. 2010) § 25.20[A], pp. 277-280; II Farnsworth on Contracts (3d ed. 2004) § 7.4, pp. 245-246; 11 Williston on Contracts (4th ed. 1999) § 33:17, pp. 632-633.)  The majority of other jurisdictions follow this traditional view.  (See *Airs Intern., Inc. v. Perfect Scents Distributions* (N.D.Cal. 1995) 902 F.Supp. 1141, 1146, fn. 15; *Touche Ross, Ltd. v. Filipek* (Haw.Ct.App. 1989) 778 P.2d 721, 728; *Pinnacle Peak Developers v. TRW Investment Corp.* (Ariz.Ct.App. 1980) 631 P.2d 540, 545 [collecting cases]; Sweet, *supra*, 49 Cal. L.Rev. at p. 889.)

---

**6**     *Casa Herrera* was not itself a parol evidence case; there we held that a nonsuit based on the parol evidence rule amounted to a favorable termination for purposes of a subsequent malicious prosecution action.  (*Casa Herrera*, *supra*, 32 Cal.4th at p. 349.)

Underlying the objection that *Pendergrass* overlooks the impact of fraud on the validity of an agreement is a more practical concern: its limitation on evidence of fraud may itself further fraudulent practices. As an Oregon court noted: "Oral promises made without the promisor's intention that they will be performed could be an effective means of deception if evidence of those fraudulent promises were never admissible merely because they were at variance with a subsequent written agreement." (*Howell v. Oregonian Publishing Co.* (Or.Ct.App. 1987) 735 P.2d 659, 661; see Sweet, *supra*, 49 Cal. L.Rev. at p. 896 ["Promises made without the intention on the part of the promisor that they will be performed are unfortunately a facile and effective means of deception"].) Corbin observes: "The best reason for allowing fraud and similar undermining factors to be proven extrinsically is the obvious one: if there was fraud, or a mistake or some form of illegality, it is unlikely that it was bargained over or will be recited in the document. To bar extrinsic evidence would be to make the parol evidence rule a shield to protect misconduct or mistake." (6 Corbin on Contracts, *supra*, § 25.20[A], p. 280.)

*Pendergrass* has been criticized on other grounds as well. The distinction between promises deemed consistent with the writing and those considered inconsistent has been described as "tenuous." (*Coast Bank v. Holmes*, *supra*, 19 Cal.App.3d at p. 591; see *Simmons v. Cal. Institute of Technology* (1949) 34 Cal.2d 264, 274; Note, *supra*, 38 Cal. L.Rev. at p. 537 [discussing *Simmons*]; Sweet, *supra*, 49 Cal. L.Rev. at p. 896 ["any attempt to forecast results in this area is a hazardous undertaking"].) The distinction between false promises and misrepresentations of fact has been called "very troublesome." (Sweet, *supra*, 49 Cal. L.Rev. at p. 895.) It has also been noted that some courts have resisted applying the *Pendergrass* limitation by various means, leading to uncertainty in the case law. (See *Duncan v. The McCaffrey Group, Inc.*, *supra*, 200 Cal.App.4th at pp. 369, 376-377; Sweet, *supra*, 49 Cal. L.Rev. at pp. 885-886; *id*. at p. 907

9

["The California experience demonstrates that even where a restrictive rule is adopted, many devices will develop to avoid its impact"]; Note, *The Fraud Exception to the Parol Evidence Rule:  Necessary Protection for Fraud Victims or Loophole for Clever Parties?* (2009) 82 So.Cal. L.Rev. 809, 829 (*Fraud Exception*) [reviewing cases, and concluding that "inconsistent application of the fraud exception . . . undermines the belief that the *Pendergrass* rule is clear, defensible, and viable"].)[7]

In 1977, the California Law Revision Commission ignored *Pendergrass* when it proposed modifications to the statutory formulation of the parol evidence

---

[7]     For instance, it has been held, erroneously, that *Pendergrass* has no application to a fraud cause of action.  (*Cobbledick-Kibbe Glass Co. v. Pugh* (1958) 161 Cal.App.2d 123, 126; see *West v. Henderson* (1991) 227 Cal.App.3d 1578, 1584.)  Fine distinctions between consistent and inconsistent promises have been made, with no effort to evaluate the relative weight attached by the defrauded party to the consistent and inconsistent representations.  (E.g., *Coast Bank v. Holmes*, *supra*, 19 Cal.App.3d at p. 592; *Shyvers v. Mitchell* (1955) 133 Cal.App.2d 569, 573-574.)  On one occasion, *Pendergrass* was simply flouted. (*Munchow v. Kraszewski* (1976) 56 Cal.App.3d 831, 836.)

The most well-developed detour around *Pendergrass* has drawn a line between false *promises* at variance with the terms of a contract and misrepresentations of *fact* about the contents of the document.  This theory, on which the Court of Appeal below relied, was articulated at length in *Pacific State Bank v. Greene*, *supra*, 110 Cal.App.4th at pages 390-396.  However, in our view the *Greene* approach merely adds another layer of complexity to the *Pendergrass* rule, and depends on an artificial distinction.  In *Greene*, a borrower was allegedly assured she was guaranteeing only certain indebtedness, an assurance that was both a false promise and a misrepresentation of the contract terms.  (*Greene*, *supra*, 110 Cal.App.4th at pp. 382-383.)  The *Greene* court conceded that evidence of the promise would have been inadmissible had it not been made when the contract was executed.  (*Id.* at p. 394.)  In this case, the *Greene* rule would exclude Ylarregui's alleged false promises in advance of the parties' agreement, but allow evidence of the same promises at the signing.  For another example of an elusive distinction between false promises and factual misrepresentations, see *Continental Airlines, Inc. v. McDonnell Douglas Corp.* (1989) 216 Cal.App.3d 388, 419-423.

10

rule.  The Commission advised the Legislature to conform the terms of section 1856 with rulings handed down by this court, observing:  "As the parol evidence rule exists in California today, it bears little resemblance to the statutory statement of the rule."  (Recommendation Relating to Parol Evidence Rule, 14 Cal. Law Revision Com. Rep., *supra*, pp. 147-148.)  The Commission identified three opinions for consideration in designing revisions to the statute.  (*Id*. at p. 148, fns. 6, 7, & 10, citing *Delta Dynamics, Inc. v. Arioto* (1968) 69 Cal.2d 525, *Pacific Gas & E. Co. v. G. W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33, and *Masterson v. Sine* (1968) 68 Cal.2d 222.)

Conspicuously omitted was any mention of *Pendergrass* and its nonstatutory limitation on the fraud exception.  The Commission's discussion of the parol evidence rule set out the fraud exception without restriction, citing *Coast Bank v. Holmes*, *supra*, 19 Cal.App.3d 581, which was strongly critical of *Pendergrass*.  (Recommendation Relating to Parol Evidence Rule, 14 Cal. Law Revision Com. Rep., *supra*, p. 148.)[8]  The Commission's proposed revisions were adopted by the Legislature.  They included no substantive changes to the statutory language allowing evidence that goes to the validity of an agreement, and evidence of fraud in particular.  (Recommendation, at p. 152; see Stats. 1978, ch. 150, § 1, pp. 374-375.)

On the other hand, *Pendergrass* has had its defenders.  Its limitation on evidence of fraud has been described as "an entirely defensible decision favoring

---

[8]     The Commission's awareness of *Pendergrass* is also indicated by its reliance on a law review article suggesting reforms to the parol evidence rule, which implicitly criticized *Pendergrass*.  (Sweet, *Contract Making and Parol Evidence:  Diagnosis and Treatment of a Sick Rule* (1968) 53 Cornell L.Rev. 1036, 1049, fn. 67; see Recommendation Relating to Parol Evidence Rule, 14 Cal. Law Revision Com. Rep., *supra*, p. 147, fns. 2 & 3.)

11

the policy considerations underlying the parol evidence rule over those supporting a fraud cause of action." (*Price v. Wells Fargo Bank*, *supra*, 213 Cal.App.3d at p. 485; accord, *Duncan v. The McCaffrey Group, Inc.*, *supra*, 200 Cal.App.4th at p. 369; *Banco Do Brasil, S.A. v. Latian, Inc.* (1991) 234 Cal.App.3d 973, 1010.) The *Price* court observed that "[a] broad doctrine of promissory fraud may allow parties to litigate disputes over the meaning of contract terms armed with an arsenal of tort remedies inappropriate to the resolution of commercial disputes." (*Price*, *supra*, at p. 485; see also *Banco Do Brasil*, at pp. 1010-1011.)

We note as well that the *Pendergrass* approach is not entirely without support in the treatises and law reviews. Wigmore, in a comment relied upon by the bank in *Pendergrass* and referred to indirectly by the *Pendergrass* court, has opined that an intent not to perform a promise should not be considered fraudulent for purposes of the parol evidence rule. (IX Wigmore, Evidence (Chadbourn rev. 1981) § 2439, p. 130; see Sweet, *supra*, 49 Cal. L.Rev. at p. 883; *Pendergrass*, *supra*, 4 Cal.2d at p. 264.) A recent law review comment, while critical of *Pendergrass*, favors limiting the scope of the fraud exception and advocates an even stricter rule for sophisticated parties. (*Fraud Exception*, *supra*, 82 So.Cal. L.Rev. at pp. 812-813.)

C. Pendergrass *Reconsidered*

There are multiple reasons to question whether *Pendergrass* has stood the test of time. It has been criticized as bad policy. Its limitation on the fraud exception is inconsistent with the governing statute, and the Legislature did not adopt that limitation when it revised section 1856 based on a survey of California case law construing the parol evidence rule. *Pendergrass*'s divergence from the path followed by the Restatements, the majority of other states, and most commentators is cause for concern, and leads us to doubt whether restricting fraud claims is necessary to serve the purposes of the parol evidence rule. Furthermore,

12

the functionality of the *Pendergrass* limitation has been called into question by the vagaries of its interpretations in the Courts of Appeal.

We respect the principle of stare decisis, but reconsideration of a poorly reasoned opinion is nevertheless appropriate.[9]  It is settled that if a decision departed from an established general rule without discussing the contrary authority, its weight as precedent is diminished.  (See, e.g., *Phelan v. Superior Court* (1950) 35 Cal.2d 363, 367-369; 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 537, pp. 606-608.)  Accordingly, we review the state of the law on the scope of the fraud exception when *Pendergrass* was decided, to determine if it was consistent with California law at that time.

---

[9]     " 'The doctrine of stare decisis expresses a fundamental policy . . . that a rule once declared in an appellate decision constitutes a precedent which should normally be followed . . . .  It is based on the assumption that certainty, predictability  and stability in the law are the major objectives of the legal system . . . .' (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 758, p. 726; *Moradi-Shalal v. Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 296.)  But, as Justice Frankfurter wrote, it equally is true that ' " '*[s]tare decisis* is a principle of policy and not a mechanical formula of adherence to the latest decision, however recent and questionable, when such adherence involves collision with a prior doctrine more embracing in its scope, intrinsically sounder, and verified by experience.' [Citations.]" ' (*Cianci v. Superior Court* (1985) 40 Cal.3d 903, 923-924, quoting *Boys Markets v. Clerks Union* (1970) 398 U.S. 235, 240-241.)  As this court has stated: 'Although the doctrine [of stare decisis] does indeed serve important values, it nevertheless should not shield court-created error from correction.' (*Cianci v. Superior Court*, *supra*, 40 Cal.3d at p. 924; *County of Los Angeles v. Faus* (1957) 48 Cal.2d 672, 679 ['Previous decisions should not be followed to the extent that error may be perpetuated and that wrong may result.']. See also the concurring opinion of Justice Mosk in *Smith v. Anderson* (1967) 67 Cal.2d 635, 646, quoting *Wolf v. Colorado* (1949) 338 U.S. 25, 47 [' "Wisdom too often never comes, and so one ought not to reject it merely because it comes late." '].)" (*Peterson v. Superior Court* (1995) 10 Cal.4th 1185, 1195-1196; see also *Freeman & Mills, Inc. v. Belcher Oil Co.* (1995) 11 Cal.4th 85, 92-93.)

Earlier cases from this court routinely stated without qualification that parol evidence was admissible to prove fraud. (E.g., *Martin v. Sugarman* (1933) 218 Cal. 17, 19; *Ferguson v. Koch* (1928) 204 Cal. 342, 347; *Mooney v. Cyriacks* (1921) 185 Cal. 70, 80; *Maxson v. Llewelyn* (1898) 122 Cal. 195, 199; *Hays v. Gloster* (1891) 88 Cal. 560, 565; *Brison v. Brison* (1888) 75 Cal. 525, 528; see also 10 Cal.Jur. (1923) Evidence § 203, pp. 937-938; Sweet, *supra*, 49 Cal. L.Rev. at pp. 880-882.) As the *Ferguson* court declared, "Parol evidence is always admissible to prove fraud, and it was never intended that the parol evidence rule should be used as a shield to prevent the proof of fraud." (*Ferguson*, *supra*, 204 Cal. at p. 347.)

Historically, this unconditional rule was applied in cases of promissory fraud. For instance, in *Langley v. Rodriguez* (1898) 122 Cal. 580, the trial court excluded evidence of an oral promise by a packing company agent to make an advance payment to a grower. This court reversed, stating: "The oral promise to pay part of the agreed price in advance of the curing of the crop was in conflict with the provision of the written contract that payment would be made on delivery of the raisins at the packing-house, and if the promise was honestly made it was undoubtedly within the rule forbidding proof of a contemporaneous or prior oral agreement to detract from the terms of a contract in writing. The rule cannot be avoided by showing that the promise outside the writing has been broken; such breach in itself does not constitute fraud. [Citations.] But a promise made without any intention of performing it is one of the forms of actual fraud (Civ. Code, sec. 1572); and cases are not infrequent where relief against a contract reduced to writing has been granted on the ground that its execution was procured by means of oral promises fraudulent in the particular mentioned, however variant from the terms of the written engagement into which they were the means of inveigling the

14

party.  [Citations.]" (*Langley*, *supra*, 122 Cal. at pp. 581-582; see also, e.g., *Hays v. Gloster*, *supra*, 88 Cal. at p. 565; *Brison v. Brison*, *supra*, 75 Cal. at p. 528.)

Interestingly, two years after *Pendergrass* this court fell back on the old rule in *Fleury v. Ramacciotti* (1937) 8 Cal.2d 660, a promissory fraud case. Ramacciotti, a mortgage debtor, claimed he had signed a renewal note without reading it, relying on a false promise that the note included a provision barring a deficiency judgment.  (*Id.* at p. 661.)  The trial court ruled in Ramacciotti's favor. The *Fleury* court affirmed, stating summarily:  "Plaintiff's contention that the evidence was admitted in violation of the parol evidence rule is of course untenable, for although a written instrument may supersede prior negotiations and understandings leading up to it, fraud may always be shown to defeat the effect of an agreement." (*Id.* at p. 662; see also *Stock v. Meek* (1950) 35 Cal.2d 809, 815-816 [mistake of law case, quoting old rule and language from Rest. of Contracts permitting extrinsic evidence of mistake or fraud].)

Thus, *Pendergrass* was plainly out of step with established California law. Moreover, the authorities to which it referred, upon examination, provide little support for the rule it declared.  The *Pendergrass* court relied primarily on *Towner v. Lucas' Exr.*, *supra*, 54 Va. 705, quoting that opinion at length.  (*Pendergrass*, *supra*, 4 Cal.2d at pp. 263-264.)  In *Towner*, a debtor relied on an oral promise of indemnity against payment on surety bonds.  However, no fraud was alleged, nor was it claimed that the promise had been made without the intent to perform, an essential element of promissory fraud.  (*Towner*, *supra*, 54 Va. at pp. 706, 722; see *Langley v. Rodriguez*, *supra*, 122 Cal. at p. 581; 5 Witkin, Summary of Cal. Law, *supra*, Torts, § 781, p. 1131.)  While dicta in *Towner* provides some support for the *Pendergrass* rule, the *Towner* court appeared to be principally concerned with the consequences of a rule that mere proof of nonperformance of an oral promise

15

at odds with the writing would establish fraud.  (*Towner*, *supra*, 54 Va. at p. 716; see Sweet, *supra*, 49 Cal. L.Rev. at pp. 884-885.)

*Pendergrass* also cited a number of California cases.  Yet not one of them considered the fraud exception to the parol evidence rule.  (*Pendergrass*, *supra*, 4 Cal.2d at p. 264, citing *Harding v. Robinson* (1917) 175 Cal. 534, *Lindemann v. Coryell* (1922) 59 Cal.App. 788, *McArthur v. Johnson* (1932) 216 Cal. 580, *Pierce v. Avakian* (1914) 167 Cal. 330, *Booth v. Hoskins* (1888) 75 Cal. 271, and *Estate of Watterson* (1933) 130 Cal.App. 741.  See *Harding*, at p. 539 ["As the complaint is totally insufficient to raise an issue of fraud, so, also, are the findings totally insufficient to establish fraud"]; *Lindemann*, at p. 791 ["no questions of fraud, deceit or mistake are raised"]; *McArthur*, at p. 581 [" 'No issues of invalidity, illegality, fraud, accident or mistake were tendered' "]; *Pierce*, at p. 331 [no allegation of fraud]; *Booth*, at p. 276 [no fraud; "The whole case shows that Booth justly owed the defendant all the money claimed by him"]; *Watterson*, at p. 745 [discussing mistake and ambiguity, but not fraud].)

Accordingly, we conclude that *Pendergrass* was an aberration.  It purported to follow section 1856 (*Pendergrass*, *supra*, 4 Cal.2d at p. 264), but its restriction on the fraud exception was inconsistent with the terms of the statute, and with settled case law as well.  *Pendergrass* failed to account for the fundamental principle that fraud undermines the essential validity of the parties' agreement.  When fraud is proven, it cannot be maintained that the parties freely entered into an agreement reflecting a meeting of the minds.  Moreover, *Pendergrass* has led to instability in the law, as courts have strained to avoid abuses of the parol evidence rule.  The *Pendergrass* court sought to " 'prevent frauds and perjuries' " (*id*. at p. 263), but ignored California law protecting against promissory fraud.  The fraud exception has been part of the parol evidence rule since the earliest days of our jurisprudence, and the *Pendergrass* opinion did not justify the abridgment it

16

imposed.  For these reasons, we overrule *Pendergrass* and its progeny, and reaffirm the venerable maxim stated in *Ferguson v. Koch*, *supra*, 204 Cal. at page 347:  "[I]t was never intended that the parol evidence rule should be used as a shield to prevent the proof of fraud."

This court took a similar action in *Tenzer v. Superscope, Inc.* (1985) 39 Cal.3d 18 (*Tenzer*).  *Tenzer* disapproved a 44-year-old line of cases to bring California law into accord with the Restatement Second of Torts, holding that a fraud action is not barred when the allegedly fraudulent promise is unenforceable under the statute of frauds.  Considerations that were persuasive in *Tenzer* also support our conclusion here.  The *Tenzer* court decided the Restatement view was better as a matter of policy.[10]  (*Tenzer*, *supra*, 39 Cal.3d at p. 29.)  It noted the principle that a rule intended to prevent fraud, in that case the statute of frauds, should not be applied so as to facilitate fraud.  (*Id*. at p. 30.)  The court further reasoned that restricting fraud claims was not necessary to prevent nullification of the statute of frauds, because promissory fraud is not easily established.  Proof of intent not to perform is required.  It is insufficient to show an unkept but honest promise, or mere subsequent failure of performance.  (*Ibid*.)  " '[S]omething more than nonperformance is required to prove the defendant's intent not to perform his promise.'  [Citations.]  To be sure, fraudulent intent must often be established by circumstantial evidence. . . .  However, if [a] plaintiff adduces no further evidence

---

[10]     *Tenzer* observed:   " 'Comment (c) to section 530 of the Restatement Second of the Law of Torts states that a misrepresentation of one's intention is actionable even "when the agreement is oral and made unenforceable by the statute of frauds, or when it is unprovable and so unenforceable under the parol evidence rule." ' "  (*Tenzer*, *supra*, 39 Cal.3d at p. 29.)  Witkin, noting this reference to the parol evidence rule, questioned whether the *Pendergrass* limitation would survive.  (2 Witkin, Cal. Evidence, *supra*, Documentary Evidence § 100, pp. 245-246.)

of fraudulent intent than proof of nonperformance of an oral promise, he will never reach a jury." (*Id*. at pp. 30-31.)

Here, as in *Tenzer*, we stress that the intent element of promissory fraud entails more than proof of an unkept promise or mere failure of performance. We note also that promissory fraud, like all forms of fraud, requires a showing of justifiable reliance on the defendant's misrepresentation. (*Lazar v. Superior Court*, *supra*, 12 Cal.4th at p. 638.) The Credit Association contends the Workmans failed to present evidence sufficient to raise a triable issue on the element of reliance, given their admitted failure to read the contract. However, we decline to decide this question in the first instance. The trial court did not reach the issue of reliance in the summary judgment proceedings below, nor did the Court of Appeal address it.[11]

---

[11] In *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 419 (*Rosenthal*), we considered whether parties could justifiably rely on misrepresentations when they did not read their contracts. We held that negligent failure to acquaint oneself with the contents of a written agreement precludes a finding that the contract is void for fraud in the execution. (*Id*. at p. 423.) In that context, "[o]ne party's misrepresentations as to the nature or character of the writing do not negate the other party's apparent manifestation of assent, if the second party had 'reasonable opportunity to know of the character or essential terms of the proposed contract.' [Citation.]" (*Ibid*.)

We expressed no view in *Rosenthal* on the "validity" and "exact parameters" of a more lenient rule that has been applied when equitable relief is sought for fraud in the inducement of a contract. (*Rosenthal*, *supra*, 14 Cal.4th at p. 423; see *California Trust Co. v. Cohn* (1932) 214 Cal. 619, 627; *Fleury v. Ramaciotti*, *supra*, 8 Cal.2d at p. 662; *Lynch v. Cruttenden & Co.* (1993) 18 Cal.App.4th 802, 807; 1 Witkin, Summary of Cal. Law, *supra*, Contracts, § 301, pp. 327-328.) Here as well we need not explore the degree to which failure to read the contract affects the viability of a claim of fraud in the inducement.

## III. DISPOSITION

We affirm the Court of Appeal's judgment.

**CORRIGAN, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**KENNARD, J.**
**BAXTER, J.**
**WERDEGAR, J.**
**CHIN, J.**
**LIU, J.**

**Name of Opinion** Riverisland Cold Storage, Inc. v. Fresno-Madera Production Credit Association
_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 191 Cal.App.4th 611
**Rehearing Granted**

_____

**Opinion No.** S190581
**Date Filed:** January 14, 2013
_____

**Court:** Superior
**County:** Fresno
**Judge:** Adolfo M. Corona

_____

**Counsel:**

LaMontagne & Terhar, Eric A. Amador; Wild, Carter & Tipton and Steven E. Paganetti for Plaintiffs and Appellants.

Lang, Richert & Patch, Scott J. Ivy, Ana de Alba; Dowling, Aaron & Keeler, Nickolas J. Dibiaso and Lynne Thaxter Brown for Defendant and Respondent.

Reed Smith, Peter S. Muñoz, Raymond A. Cardozo and Dennis Peter Maio for California Bankers Association as Amicus Curiae on behalf of Defendant and Respondent.

Downey Brand, Daniel J. Coyle and Cassandra M. Ferrannini for American AgCredit, ACA, CoBank, Farm Credit Services of Colusa-Glenn, ACA, Farm Credit West, ACA, Northern California Farm Credit, ACA, U.S. AgBank, FCB, and Yosemite Farm Credit, ACA, as Amici Curiae on behalf of Defendant and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Steven E. Paganetti
Wild, Carter & Tipton
246 West Shaw Avenue
Fresno, CA  93704
(559) 224-2131

Scott J. Ivy
Lang, Richert & Patch
5200 North Palm Avenue, Fourth Floor
Fresno, CA  93755-0012
(559) 228-6700