Filed 8/14/14  Ronnoco Properties of Pleasanton v. Crossroads CEIC Partners CA1/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| RONNOCO PROPERTIES OF PLEASANTON, L.P., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> CROSSROADS CEIC PARTNERS, L.P., <br><br> Defendant and Respondent. | A136698 <br><br> (Alameda County Super. Ct. No. VG10505583) |

Plaintiff Ronnoco Properties of Pleasanton, L.P. (Ronnoco) is the owner of a building in a commercial development.  Under the declaration of covenants, conditions, and restrictions (CC&R's) governing the development, defendant Crossroads CEIC Partners, L.P. (Crossroads) is responsible for maintaining the common area.  Ronnoco contended Crossroads had violated the CC&R's by refusing to pay for the collection of trash generated by the tenants in Ronnoco's building and failing to clean the portion of the common area near the building.  After a bench trial, the court held for Crossroads on several different grounds.  We affirm the judgment.

## BACKGROUND

Ronnoco filed suit against Crossroads in March 2010, asserting a claim for breach of contract and seeking a declaration of the rights of the parties and an accounting.  The complaint alleged that Crossroads, which is in charge of maintaining the common area of a commercial development in which Ronnoco holds property, had breached the CC&R's

1

by failing to pay for trash collection and to clean the common areas. The matter proceeded to a bench trial in October 2011.

The Crossroads at Hacienda (Hacienda) is a commercial development of seven parcels of real property in Pleasanton. Six of the parcels consist of buildings and the land directly underneath the building footprint; the seventh is the remainder of the lot, referred to as the "common area" and consisting largely of walkways and the parking lots. Ronnoco owns one of the building parcels, and Crossroads owns two of them. The remainder is owned by nonparties. The common area is owned jointly by the owners of the building parcels as tenants in common. Hacienda is subject to a set of CC&R's, and Crossroads is the "declarant" under the CC&R's.

The CC&R's required Crossroads, as the declarant, to "operate and maintain" the common area. In a section entitled, "Common Area Operation Obligations," Crossroads was required, among other duties, to maintain the concrete surface, lighting, landscaping, signage, and utilities and to enforce the rules governing Hacienda. As particularly relevant here, Crossroads was also required to "[r]emove all papers, debris, filth and refuse and wash or sweep the surface of the parking areas and sidewalks in the Common Area as often as reasonably necessary." The CC&R's also prohibited "selling or retail activity" in the common area. Throughout the relevant period, lasting over a decade, Crossroads had permitted Ronnoco and other building owners whose tenants operate food service businesses to maintain tables and chairs outside their buildings, although at trial Crossroads contended this practice constituted a violation of the prohibition on "selling or retail activity" in the common area. Trash generated by the business operations of the buildings' tenants was placed in dumpsters, or in Ronnoco's case a compactor, kept in enclosures behind the buildings. Because all land not directly underneath the buildings was part of the common area, these enclosures were in the common area.

At the time Ronnoco purchased its building in Hacienda in 1998, the project had been operating for some time. To handle day-to-day management of its building operations, Ronnoco hired a company that was already performing the service for another building owner at Hacienda. In reliance on that property manager's direction, Ronnoco

2

paid for its own trash collection, sidewalk power washing, and day porter services for the portion of the common area near its building. Although Ronnoco paid the bills for these services in the first instance, the costs were passed through to its tenants under the terms of their leases.

In 2007, Ronnoco sued Crossroads, raising claims similar to those in this action. That action was resolved by a settlement agreement requiring Ronnoco and Crossroads to devise a "rewrite" of the CC&R's for presentation to the remaining owners. In the meantime, the settlement agreement required the owners to continue to pay for their own day porter and power washing services, in the manner "prior to 2007." The settlement agreement did not mention trash collection fees.

Following the settlement, the parties worked to devise a new set of CC&R's agreeable to all, but they were unsuccessful. In September 2009, Ronnoco gave notice that it was terminating the discussions. In June 2010, Crossroads assumed responsibility for power washing and day porter services in all of the common area, including the portions immediately adjacent to the buildings, but it declined to pay for trash collection. Ronnoco provided no evidence that Crossroads' post-June 2010 performance of the cleaning services was deficient. On the contrary, a Ronnoco witness acknowledged that "everything's working smoothly today" and Crossroads "ke[eps] the property in good condition."

The trial court's final statement of decision found for Crossroads on all claims. The court held: (1) the other parcel owners were indispensable parties to the action and it would be unfair to render judgment in their absence, (2) the CC&R's were amended by an oral agreement requiring owners to pay for their own trash collection, (3) the CC&R's did not, in any event, require Crossroads to provide trash collection services, (4) Crossroads had properly performed its duties under the CC&R's with respect to power washing and day porter services, (5) the doctrines of estoppel and unclean hands precluded Ronnoco from challenging Crossroad's performance of those duties, (6) Ronnoco had not proven damages, (7) by failing to request an audit, Ronnoco had forfeited any objection to the common area maintenance expenses, and (8) Ronnoco was

3

precluded from requiring Crossroads to provide power washing and day porter services for that portion of the common area in which it permitted its tenants to keep tables and chairs. Judgment was entered for Crossroads.

## DISCUSSION

Ronnoco challenges the trial court's holdings with respect to trash collection, power washing and day porter expenses, and indispensible parties. Because we affirm the trial court's conclusions on the first two issues, we find it unnecessary to address the third.

### A. Trash Collection.

We agree with the trial court that, as a matter of contract interpretation, the CC&R's do not require Crossroads to provide collection services for trash generated by the business activities of the building owners and their tenants.

"When interpreting a contract, we must give effect to the mutual intention of the parties at the time of contracting, to the extent such intent is ascertainable and lawful. [Citation.] We begin our interpretation by reviewing the language of the contract, because 'The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity.' [Citation.] Generally, the words of a contract are to be understood in their ordinary and popular sense, unless used by the parties in a technical sense. [Citation.] [¶] A contract provision is considered ambiguous when it may be interpreted in two or more ways, both of which are reasonable. [Citation.] The language of a contract, however, must be interpreted as a whole [citation], and a contract cannot be found ambiguous in the abstract." (*Duncan v. The McCaffrey Group, Inc.* (2011) 200 Cal.App.4th 346, 380, overruled on other grounds in *Riverisland Cold Storage, Inc. v. Fresno-Madera Production Credit Assn.* (2013) 55 Cal.4th 1169, 1176, 1182.) When, as here, there is no conflict in the extrinsic evidence, "[i]nterpretation of a written instrument becomes solely a judicial function." (*City of Hope National Medical Center v. Genentech, Inc.* (2008) 43 Cal.4th 375, 395.)

We find no ambiguity in the language of the CC&R's. Crossroads' duty as declarant was to maintain the common area, which encompassed the area outside the

4

individual buildings.  The provision of the CC&R's on which Ronnoco relies, section 5.2, requires the declarant to "[r]emove all papers, debris, filth and refuse and wash or sweep the surface of the parking areas and sidewalks in the Common Area as often as reasonably necessary."   In other words, the declarant was to keep the common area clean, including by removing litter.  The trash that Ronnoco claims Crossroads was required to remove was not litter that accumulated in the common area.  Rather, it was trash generated *inside* the buildings by virtue of the operation of the businesses within them.[1]  It had nothing to do with the operation or existence of the common area, except that the building owners moved the trash into containers in designated areas outside the buildings to allow its collection.  Ronnoco argues the presence of the trash in the common area is sufficient, but merely moving the trash generated by the business operations outside, which by definition meant placing it in the common area, did not bring the owners' trash within the declarant's obligation to keep the common area clean. Such an interpretation would, in effect, extend the declarant's common area cleaning obligation into the buildings themselves.

Yet, even if we found the language ambiguous and equally susceptible to the construction urged by Ronnoco, the parties' historic practice would require us to find in favor of Crossroads.  If both parties to a contract offer reasonable interpretations, "we must look to other objective manifestations of the parties' intent.  In instances such as this, where there is no evidence that the parties specifically agreed, or even discussed, [the contract term at issue], the conduct of the parties after the execution of the contract, and before any controversy arose, may be considered in order to attempt to ascertain the parties' intention. [Citation.]  'It is well settled that although an agreement may be indefinite or uncertain in its inception, the subsequent performance of the parties will be considered in determining its meaning for they are least likely to be mistaken as to the intent.  [Citations.]' "  (*Oceanside 84, Ltd. v. Fidelity Federal Bank* (1997) 56

---

[1] This is in distinction to the trash cans placed throughout the common area for the collection of litter.  Crossroads assumed responsibility for emptying these containers in June 2010.

Cal.App.4th 1441, 1449.)  Here, the building owners, including Ronnoco, paid for their own trash collection for at least seven years before Ronnoco objected.  A witness from the management company originally retained by Ronnoco testified that the building owners had concluded the CC&R's were ambiguous with respect to the treatment of building trash and jointly agreed to interpret them to require the owners to pay for their own trash collection.[2]

As support for its argument, Ronnoco cites article 1.7 of the CC&R's, which defines "Common Area Maintenance Expense" to include "trash removal."  Because "trash removal" is not itself defined in this section, there is no reason to construe the term to refer to anything other than the same trash referred to in article 5.2.  As noted, we construe the use of that term in article 5.2 not to include refuse generated within the buildings.

### B.  Power Washing and Day Porter Services.

Ronnoco's claim on appeal with respect to the power washing and day porter services is a limited one:  the trial court erred in holding that Crossroads had no obligation to provide power washing and day porter services in areas in which Ronnoco's tenants maintained tables and chairs.

We agree that the trial court erred in finding Ronnoco was guilty of "unclean hands" that relieved Crossroads of an obligation to clean in areas where Ronnoco maintained tables and chairs.  As the trial court held, Ronnoco had permitted its tenants to maintain tables and chairs in the common area with Crossroads' consent.  Regardless of whether the presence of tables and chairs constituted "selling or retail activity" that violated the CC&R's, as now contended by Crossroads, Crossroads waived any violation by consenting to the presence of the tables and chairs.  Ronnoco could not have been guilty of "violat[ing] conscience, good faith or other equitable principles," as required by the doctrine of unclean hands (*Smoketree-Lake Murray, Ltd. v. Mills Concrete*

---

[2] Because we find the contract not to require trash collection, we need not decide whether the conduct described by the management witness constituted an oral amendment to the CC&R's, as concluded by the trial court.

*Construction Co.* (1991) 234 Cal.App.3d 1724, 1742), by engaging in conduct to which Crossroads consented.

It is true the agreement regarding power washing and day porter services was eventually dissolved by Ronnoco, but Crossroads thereafter began providing these services in the areas where the building owners maintained tables and chairs without objecting to their presence. Because Crossroads neither refused to provide such services around the tables and chairs nor demanded the owners remove them in order to continue to receive such services, the trial court was not called upon to make a ruling on Crossroads' prospective duty under the CC&R's with respect to the cleaning services. To the extent the court's decision can be construed to make such a ruling, it would be an improper advisory opinion.

While we conclude the trial court erred in its application of the doctrine of unclean hands, our conclusion does not require a change in the judgment. As noted above, the trial court found that Crossroads' failure to provide power washing and day porter services occurred pursuant to an agreement among the parties. The court also held Ronnoco had not, in any event, proven damages as a result of the failure to provide such services because all of its costs were passed on to its tenants under the terms of the leases. For both these reasons, Ronnoco was not entitled to damages, regardless of its purported unclean hands. Nor did the trial court err in failing to award Ronnoco declaratory relief on this ground. Because at the time of trial Crossroads had agreed to provide, and was providing power washing and day porter services in all parts of the common area, there was no breach of the CC&R's to justify the award of declaratory relief.

Ronnoco does not address in its opening brief the trial court's denial of an accounting with respect to common area maintenance expenses as a result of its failure to request an audit. Accordingly, any challenge to the denial is waived. (E.g., *People v. Williams* (2013) 218 Cal.App.4th 1038, 1062, fn. 5.)

7

## DISPOSITION

The judgment of the trial court is affirmed.

_____
Becton, J.*

We concur:

_____
Dondero, Acting P.J.

_____
Banke, J.

* Judge of the Contra Costa County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

8