Filed 8/6/13  Kyung v. El Paseo South Gate CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MYUNG HO KYUNG,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>EL PASEO SOUTH GATE, LLC,<br><br>    Defendant and Respondent. | B243720<br><br>(Los Angeles County<br>Super. Ct. No. VC058316 ) |

APPEAL from a judgment of the Superior Court of Los Angeles County,

Yvonne T. Sanchez, Judge.  Reversed and remanded with directions.

David D. Kim & Associates, David D. Kim and Daniel A. DeSoto for Plaintiff

and Appellant.

Schelberg & Ross and James H. Ross for Defendant and Respondent.

## INTRODUCTION

Plaintiff and appellant Myung Ho Kyung (Kyung) appeals from the granting of a motion for summary judgment (Motion) brought by his landlord, defendant and respondent El Paseo Shopping Center LLC (Respondent). In ruling upon the Motion, the trial court did not have the benefit of a recent decision by the California Supreme Court, *Riverisland Cold Storage, Inc. v. Fresno-Madera Production Credit Assn*. (2013) 55 Cal.4th 1169 (*Riverisland*). Mainly in light of that decision, we will reverse the judgment.

In reaching that conclusion, we express no opinion on the merits of Kyung's claims. While we make some comments below on the future of this lawsuit, we mainly focus on determining that the Motion should not have been granted in light of the current record.

## FACTUAL BACKGROUND

In 2001, Kyung signed a lease (Lease) with respect to a business premises (Premises) at the El Paseo Shopping Center (Shopping Center). There, with his wife, Kyung operated a restaurant (Restaurant). Kyung entered into a written lease dated February 23, 2001 and, by assignment, Respondent subsequently became Kyung's landlord with respect to the Premises.

In August 2009, Respondent and Kyung executed a written amendment to the Lease (the "Lease Amendment"), which reduced the Restaurant's monthly rent to $1,000 and forgave back rent if Kyung remained in the Premises until the Lease's expiration. With ninety days written notice, paragraph 4 of the Lease Amendment gave

2

Respondent "the right" to relocate the Restaurant, at Respondent's expense, at any time during the term of the lease. Paragraph 5 afforded Respondent the "right to terminate" the Lease, also with such notice.

In late September 2010, Kyung received a notice with respect to terminating the Lease (9/10 Notice). On December 20, Respondent withdrew the 9/10 Notice and served Kyung with another termination notice (12/10 Notice), demanding his departure from the Premises by March 20, 2011.

On March 16, 2011, Kyung filed this lawsuit, alleging causes of action for breach of contract, specific performance, fraud and injunctive relief. Two days later, he requested a temporary restraining order precluding his eviction. The trial court denied the request, but set a hearing on Kyung's motion for preliminary injunction.

On April 18, 2011, Respondent filed an unlawful detainer action, seeking recovery of the Premises. On May 6, the trial court granted the motion for preliminary injunction. Respondent dismissed its unlawful detainer action. On June 15, Respondent moved to terminate the preliminary injunction, citing the Lease's expiration. On July 21, the trial court granted that motion.

On July 27, Respondent filed another unlawful detainer action, which concluded with a stipulated judgment in its favor. In December 2011, Kyung vacated the Premises and closed the Restaurant.

On June 26, 2012, in granting the Motion, the trial court stated:

"The lease, as amended, is controlling. It contains an integration

clause stating 'It is understood that there are no oral or written agreements

3

or representations between the parties hereto affecting this lease.' [Citation.] It further states 'This lease, and all amendments hereto, are the only agreement between the parties hereto.' . . . Moreover, the statute of frauds requires that leases of real property for more than one year be in writing. . . .

"The terms of the lease are unambiguous. The right of relocation extends to [Respondent] only . . . . The right to rescind the notice of relocation at any time before actual relocation is implicit. In this case, [Respondent] rescinded the notice, allowed [Kyung] to remain at its original location until the lease expired on its own terms. [Citation.] [Respondent] had no duty to renew the lease or relocate [Kyung]. . . .

"The fraud allegations contradict the written contract terms. . . . Misrepresentations, to be actionable must relate to past or then existing fact, not future conduct or predictions as to future events. [Citation.] [Kyung's] allegations all relate to actions that [Respondent] 'would' do or not do in the future. These types of promises sound in breach of contract not tort . . . . [C]ontracts related to long term leases of real property must be in writing . . . . [Kyung] cannot justifiably rely on such promises. Moreover, [Kyung] has not pled or shown reliance damages (as opposed to the alleged breach of contract damages)."

The trial court also ruled on various evidentiary objections. In particular, that court overruled Respondent's Objections to the Declarations of Kyung and Han (Objections).

On September 27, 2012, the trial court awarded Respondent attorney's fees. After entry of Judgment, a Notice of Appeal was filed.[1]

The Restaurant's closure after this lawsuit's filing in effect mooted Kyung's causes of action for specific performance and injunctive relief. Hence, Kyung's sole operative causes of action are now breach of contract and fraud.

### KYUNG'S ALLEGATIONS

In granting the Motion, the trial court rejected Kyung's allegations which, in his view, precluded that court's ruling. Inasmuch as relevant to this opinion, those allegations are set forth in this section.

Although Kyung and his wife devoted many working hours and invested in excess of $350,000, after a while the Restaurant did not generate sufficient revenue. Respondent, though, continued to let the Restaurant operate.

Respondent's "agent and manager in charge of the Shopping Center," Beth Villalobos (Villalobos), offered to reduce the Premises' rent and forgive all past owed rent, if the Restaurant would stay open until the Lease's expiration. Moreover, she added, at its expense, Respondent would relocate the Restaurant to another locale in the Shopping Center, with a new lease.

---

[1] Its tentative ruling became the order of the trial court.

5

As Kyung's English is limited, Don Han (Han), his friend, would sometimes be his translator in dealings with Respondent, including with Villalobos. Villalobos told Han that the Lease Amendment's reference to Respondent's "right" with respect to any relocation was "legalese," and the Restaurant's future relocation was "100 percent" if Kyung went along with that amendment. Han told Kyung what Villalobos said. Based on those oral promises, especially as Kyung had come to rely on Villalobos, he signed the Lease Amendment.

In August 2010, Villalobos stated to Kyung that the next month the Restaurant would be relocated to a space previously occupied by TOGO's. Villalobos later came to the Restaurant with John Gebhardt, who introduced himself as a financial advisor for Respondent. Gebhardt told Kyung that he would be evaluating the compensation Respondent would pay Kyung as part of the relocation.

In September 2010, Villalobos visited the Restaurant, telling Kyung she had "good news." She had a typewritten note, but did not give Kyung a copy. Villalobos remarked Kyung's new lease would be for 10 years: the initial year, three months of no rent and then $1,835 per month for the next nine months; the next four years would have a monthly rent of $3,670; and after five years, the monthly rent would increase by 12.5 percent.

Respondent's contractor, Michael Messang, said to Kyung that he would be overseeing the construction of Kyung's restaurant at its new location. An email, dated October 14, 2010, from Messang to Villalobos discussed the related construction costs and time necessary for completion.

6

In delivering to Kyung the 9/10 Notice, Villalobos asked to converse with Han. After speaking to Han, Villalobos returned the telephone to Kyung. Han stated to Kyung that, according to Villalobos, he should disregard the 9/10 Notice as the Lease had to expire before the execution of any new lease. Relying on this information, Kyung disregarded the 9/10 Notice.

On October 27, 2010, Respondent informed Kyung that it was exercising its right to relocate him, pursuant to paragraph 4 of the Lease Amendment. On or about November 7, 2010, Villalobos told Kyung that she had "bad news." Respondent could not relocate him or give him a new lease because of a non-compete provision in another tenant's lease. Villalobos noted Kyung could either vacate on December 31 (pursuant to the 9/10 Notice), change the Restaurant's menu to offer non-Asian food, or move to another shopping mall owned by Respondent. Kyung later submitted a proposed non-Asian menu, but that was ignored.

## ISSUES RAISED

Was the trial court correct in rejecting, as a matter of law, Kyung's causes of action for breach of contract and fraud? Was the trial court correct in its statements about Kyung's reliance and damages?

## STANDARD OF REVIEW

" 'The pleadings define the issues to be considered on a motion for summary judgment. [Citation.] As to each claim as framed by the complaint, the defendant must present facts to negate an essential element or to establish a defense. Only then will the burden shift to the plaintiff to demonstrate the existence of a triable, material issue of

7

fact. . . . [Citations.]' We review orders granting or denying a summary judgment motion de novo. [Citations.] We exercise 'an independent assessment of the correctness of the trial court's ruling, applying the same legal standard as the trial court in determining whether there are any genuine issues of material fact or whether the moving party is entitled to judgment as a matter of law.' [Citation.]" (*Travelers Property Casualty Co. of America v. Superior Court* (2013) 215 Cal.App.4th 561, 574.)

## DISCUSSION

A.     *Applicable Legal Principles*

Code of Civil Procedure section 1856(a) provides: "Terms set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement. . . . (g) This section does not exclude other evidence of the circumstances under which the agreement was made . . . to establish illegality or fraud." Subsection (a) is a statutory codification of the parol evidence rule; subsection (g) is considered "the fraud exception to the parol evidence rule." (*Riverisland*, *supra*, 55 Cal.4th at p. 1182.)

This court, in *Banco Do Brasil, S.A. v. Latian, Inc*. (1991) 234 Cal.App.3d 973, 1001 (*Banco Do Brasil*) (citations omitted), declared: "The resolution of the issue of whether the [parol evidence] rule applies so as to exclude any collateral oral agreement is one of law to be determined by the court. [Citations.] We are therefore not bound by the trial court's determination . . . . We will consider and resolve the issue de novo." Application of the parol evidence rule " 'involves a two-part analysis: (1) was the

8

writing intended to be an integration, i.e., a complete and final expression of the parties' agreement, precluding any evidence of collateral agreements; and (2) is the agreement susceptible of the meaning contended for by the party offering the evidence?' " (*Id.* at p. 1001.)

As the trial court noted, the Amended Lease contains an integration clause. (The Lease also has an integration clause. ) The wording of the Amended Lease is also entitled to weight. See, e.g. Civil Code section 1639 ["When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible . . . . "] That concept, though, is not dispositive. For example, "courts may consider all the surrounding circumstances, including prior negotiations, and may examine the collateral agreement itself to ascertain if it was meant to be part of the bargain. . . . [A]re the parol terms such that, if agreed upon, they most certainly would have been included in the writing?" (*Software Design & Application, Ltd. v. Price Waterhouse* (1996) 49 Cal.App.4th 464, 470.)

B.      *Impact of Riverisland*

According to the parol evidence rule, "when parties enter into an integrated written agreement, extrinsic evidence may not be relied upon to alter or add to the terms of the writing." (*Riverisland*, *supra*, 55 Cal.4th at p. 1174.)

"Although the parol evidence rule results in the exclusion of evidence, it is not a  rule of evidence but one of substantive law." (*Riverisland*, *supra*, 55 Cal.4th at p. 1174.) Respondent contends that, as the trial court overruled its objections to Kyung's declarations, that rule does not apply because the court had Kyung's evidence

9

in mind in ruling against him.  But the Supreme Court's comment (quoted above) in *Riverisland* demonstrate that Respondent's evidentiary contentions cannot prevail.  That is, the parol rule is not simply a matter of evidence, but as a rule of substantive law, can determine the enforceable terms of an agreement.  (*Ibid*.)

Even though an agreement may be integrated, "fraud undermines the essential validity of the parties' agreement.  When fraud is proven, it cannot be maintained that the parties freely entered into an agreement reflecting a meeting of the minds. . . .  The fraud exception has been part of the parol evidence rule since the earliest days of our jurisprudence, . . . and reaffirm the venerable maxim stated in *Ferguson v. Koch* [(1928) 204 Cal. 342] at p. 347:  '[I]t was never intended that the parol evidence rule should be used as a shield to prevent the proof of fraud.' " (*Riverisland*, *supra*, 55 Cal.4th at p. 1182.)  Accordingly, a party can "present extrinsic evidence to show that the agreement was tainted by fraud." (*Id*. at p. 1172.)  However, to prove lack of intent to perform, one must present more than "an unkept but honest promise, or mere subsequent failure of performance." (*Id*. at p. 1183.)  These statements are applicable to our conclusions below that Kyung's fraud claim cannot now be resolved as a matter of law.

The same analysis applies to the trial court's comments about the statute of frauds.  That is, "a fraud action is not barred when the allegedly fraudulent promise is unenforceable under the statute of frauds . . . a rule intended to prevent fraud, in that case the statute of frauds, should not be applied so as to facilitate fraud." (*Riverisland*,

*supra*, 55 Cal.4th at p. 1183.) Again, this statement in *Riverisland* applies only to Kyung's fraud cause of action.

On the other hand, from a defense perspective, "we stress that the intent element of promissory fraud entails more than proof of an unkept promise or mere failure of performance. We note also that promissory fraud, like all forms of fraud, requires a showing of justifiable reliance on the defendant's misrepresentation." (*Riverisland*, *supra*, 55 Cal.4th at p. 1183.) Still, these thoughts, which Respondent argues to this court, on this record cannot yield an affirmance of the trial court's ruling.

We note a very recent decision, *Julius Castle Restaurant, Inc. v. Payne* (2013) 216 Cal.App.4th 1423 (*Julius Castle*), has already addressed *Riverisland*. There, in upholding a verdict on an intentional misrepresentation claim, the appellate court approved the trial judge's submission to the jury of the question, which the jury answered in the affirmative, whether the landlord defendant had defrauded the tenant plaintiffs notwithstanding the presence of an integration clause in the lease. (*Id*. at pp. 1442-1443.) The *Julius Castle* court, though, upheld the jury's verdict rejecting the plaintiffs' breach of contract claim. (*Ibid.*)

C.  *Villalobos' Authority*

As explained above, some key issues relate to Villalobos' alleged oral promises. These issues apply to both Kyung's contract and fraud causes of action.

Even if Villalobos made the alleged oral promises, Respondent seems to assert that she lacked the requisite authority. Villalobos' e-mails indicate her title is "Director

11

of Property Management" for Sperry Van Ness Asset Management, which evidently acted as Respondent's property manager for the Shopping Center.

Kyung claims almost all, if not all, of his lease contacts with Respondent went through Villalobos. On this record, whether Villalobos was an agent or an ostensible agent of Respondent in dealing with Kyung (and Han) is an issue of fact. (See *Kaplan v. Coldwell Banker Residential Affiliates*, *Inc.* (1997) 59 Cal.App.4th 741, 748 (*Kaplan*).)

### D.	*Kyung's Breach of Contract Allegations*

At least for the purposes of this cause of action, Kyung and Respondent both appear to agree that the Lease Amendment is a "final expression" of their arrangement. Their dispute is over the meaning of the "right" to relocate as memorialized in paragraph 4 of the Lease Amendment. Kyung contends Respondent breached the Lease Amendment "by failing to relocate [Kyung] to the specified location within Respondent's shopping center, as promised." Kyung also focuses upon Villalobos' purported "100 percent" oral promise to Han to relocate the Restaurant if Kyung signed the Lease Amendment and continued to operate the Restaurant in its current location through the end of the Lease.

This cause of action obviously does not involve the "fraud exception" to the parol evidence rule. Application of that rule to this claim must thus be approached in a different manner. Parol evidence is not admissible if it contradicts the terms of the written agreement. (Code Civ. Proc., § 1856(a).) Such evidence, though, may be admissible to explain the meaning of a written term in such an agreement. (*Wagner v.*

*Columbia Pictures Industries, Inc.* (2007) 146 Cal.App.4th 586, 590, fn. 7 (*Wagner*).)

Should a party to a contract wish to introduce extrinsic evidence to interpret that contract, a trial court should preliminarily evaluate such evidence before deciding whether or not that contract is reasonably susceptible to the meaning urged by that party. (*Id*. at p. 589.)

In light of Kyung's proffered evidence, especially Villalobos' purported oral promises, is the Lease Amendment reasonably susceptible to Kyung's claim that document, in effect, guaranteed the Restaurant's relocation? Alternatively, is the Lease Amendment reasonably susceptible to Kyung's claim that it did not afford Respondent an "implicit," unilateral contractual right to rescind an already issued notice of relocation? On this record, we answer both questions in the affirmative.

1.     *Did the Lease Amendment Guarantee the Restaurant's Relocation?*

The parol evidence rule does not apply because Villalobos' alleged oral promises are not necessarily contradictory to paragraph 4 of the Lease Amendment. In *Julius Castle*, the extrinsic evidence of the landlord's promise to repair was not admissible to prove a breach of contract, because the lease explicitly stated it was the tenant's duty to maintain and repair the premises. (*Julius Castle*, *supra*, 216 Cal.App.4th at pp. 1442-1443.) The landlord's alleged promises directly contradicted the lease's terms, because the landlord and the tenant could not each be solely responsible for property maintenance and repair. (*Ibid*.; see also *Wagner*, *supra*, 146 Cal.App.4th at p. 592 ["The problem with Wagner's extrinsic evidence is that it does not explain the contract language, it contradicts it."].)

13

Kyung and Respondent argue two different, but potentially reasonable, interpretations of paragraph 4 of the Lease Amendment. Kyung says that, in light of Villalobos' alleged oral promises, paragraph 4 meant Respondent *would* relocate Kyung, pursuant to its right to do so. Determining the appropriate interpretation seems to be a question of fact for the future of this lawsuit. (See, e.g., *City of Hope National Medical Center v. Genentech, Inc*. (2008) 43 Cal.4th 375, 395 (*Genentech*).) When parties advance differing, but reasonable interpretations of contract language, the dispute invariably precludes summary judgment. (*Id.* at p. 395.)

### 2. *Did the Lease Amendment Give Respondent the Implicit Right to Rescind a Notice of Relocation?*

Even if the Lease Amendment did not guarantee the Restaurant's relocation, it cannot now be said, as a matter of law, that Respondent had an "implicit," unilateral right to revoke its pending notice of relocation, prior to any actual relocation. In supporting the trial court's view it was "implicit" that Respondent had such a unilateral right, Respondent points to the trial court's interpretation of the lease documents.

However, Villalobos' purported oral promises may be relevant to prove that paragraph 4 does not afford Respondent such a right. There is no provision, in either the Lease or Lease Amendment, that explicitly grants Respondent the unilateral right to rescind a notice of relocation. As such, Villalobos' alleged oral promises do not invoke the parol evidence rule, as they do not contradict paragraph 4. Those oral promises are sufficient to raise an issue of fact as to whether paragraph 4 reserves to Respondent the right to rescind an already issued notice of relocation. The determination of the parties'

14

intention at the time of the Lease Amendment's execution may well turn on an assessment of witness credibility, generally a matter for the trier of fact. (See *Genentech*, *supra*, 43 Cal.4th at p. 395.)

E. *Kyung's Promissory Fraud Allegations*

In defense of his cause of action for promissory fraud, Kyung submitted his declaration, in addition to Han's, to the trial court. Furthermore, his June letter brief alleges Villalobos made two oral promises to him "without the intent to perform": (1) Respondent "would relocate [Kyung] to another space (8620 Garfield Avenue, Suite 100) if [Kyung] continued to operate at its current location until the end of the lease term"; and (2) Kyung "would be given a new lease." Respondent also "falsely represented the content of the [Lease] Amendment at the time of [its] signing, specifically, that Respondent's 'right' to relocate was 'legalese' and that the relocation to TOGO's was '100 percent' so long as [Kyung] complied with the terms of the [Lease] Amendment."

On remand, the trial court should evaluate the extent to which these, and any other issues, should be submitted to a jury, if there is a trial. Still, in an effort to focus the matters for any trial or subsequent motion proceedings, we make the following observations.

The trial court's ruling did not specifically refer to the parol evidence rule. But that court's statements about the Lease Amendment's "integration clause" and other provisions in that document in effect concluded that rule negated Kyung's oral "fraud allegations." That is, as those allegations in that court's words "contradict" the Lease

15

Amendment, the parol evidence rule precluded as a matter of law consideration of those fraud allegations.

According to Code of Civil Procedure section 1856, that rule precludes extrinsic evidence because it is "irrelevant" to determining the enforceable terms of an integrated agreement. (*Riverisland*, *supra*, 55 Cal.4th at p. 1174.) The same evidence, however, may be relevant to establishing fraud. (*Ibid.*)

Additionally, according to the trial court, as a matter of law the statute of frauds negated Kyung's fraud assertions about Villalobos' alleged oral promises about a new lease. In light of *Riverisland*, such assertions cannot now be decided. Additionally, the trial court found Kyung's oral allegations insufficient because "[m]isrepresentations, to be actionable must relate to past or then existing fact, not future conduct . . . . " citing *Tarmann v. State Farm Mut. Auto. Ins. Co.* (1991) 2 Cal.App.4th 153, 158. But that part of the opinion in *Tarmann* addressed a cause of action for negligent misrepresentation, not fraud.

Kyung's "false promise" theory of fraud does not require the promise to relate to a past or then existing fact. (CACI No. 1902.) The elements of promissory fraud include: the defendant made a promise to plaintiff; the promise was important to the transaction; defendant did not intend to perform the promise when made; defendant intended plaintiff's reliance on that promise; plaintiff reasonably relied on the performance; defendant failed to perform; and that failure was a substantial factor in causing harm to the plaintiff. (CACI No. 1902.)

16

Villalobos' purported oral promises focused on the relocation of the Restaurant which, Kyung says, was critical to his signing the Lease Amendment. While "[i]t is insufficient to show an unkept but honest promise, or mere subsequent failure of performance" (*Riverisland*, *supra*, 55 Cal.4th at p. 1183), Kyung offers other evidence which could support a finding with respect to a lack of intent to perform. That evidence includes Respondent's refusal of Kyung's proposed menu, containing non-Asian food, and the arguably belated discovery of an existing non-compete clause, which Kyung alleges was violated by at least two other restaurants. While happening subsequent to the execution of the Lease Amendment, such evidence could nonetheless be relevant in determining Respondent's intention at the time of the Lease Amendment's execution. (See *Genentech*, *supra*, 43 Cal.4th at p. 393 [the parties' conduct "after execution of the contract and before any controversy has arisen . . . [is] the most reliable evidence of the parties' intentions."].)

According to Respondent, Kyung failed to challenge the "enforceability," which we interpret to mean validity, of the Lease Amendment. Thus, continues Respondent, Kyung's claim that Respondent lacked an intention to perform must fail. (*Riverisland*, *supra*, 55 Cal.4th at p. 1183.) And, adds Respondent, subsequent events, such as Gebhardt's visit, prove Respondent intended to follow through with the Restaurant's relocation at the time of the Lease Amendment's execution.

However, according to Kyung, he signed the Lease Amendment because of Villalobos' alleged oral promises that the Restaurant's relocation was "100 percent" and the terminology establishing such a "right" was merely "legalese." Therefore, Kyung

would not challenge the Lease Amendment's enforceability because, he alleges, he believed that amendment guaranteed relocation if the Restaurant remained in its current location until the Lease's expiration.

Kyung also offers evidence that Villalobos' purported oral promises were meant to induce reliance. In 2002, when Villalobos first approached Kyung about extending the Lease and relocating the Restaurant, Respondent had already filed an unlawful detainer action and Kyung planned to vacate. This may suggest Villalobos made the alleged oral promises intending to induce Kyung into signing the Lease Amendment.

The trial court summarily stated that Kyung could not have justifiably relied on Villalobos' purported oral promises and had not alleged or shown any reliance or related damages. But Kyung claims he had come to rely on Villalobos through his interactions with her over the course of several years. Like Kyung's contract claim, whether his reliance on Villalobos was reasonable is a question of fact, which precludes summary judgment at this juncture. (*Kaplan*, *supra*, 59 Cal.App.4th at p. 748.)

Kyung does not specify what damages arise from each cause of action. However, his opposition to the Motion claimed he suffered damages of "at least $350,000 for tenant improvements and costs of relocation, $5,000 per month compensation during relocation, damages for lost value of [his] business, [and] contractual attorneys fees and costs." On this record, Kyung's claim of damages is sufficient to proceed.

## *DISPOSITION*

Accordingly, the judgment granting Respondent's motion for summary judgment is reversed on both the breach of contract and the fraud claims, and this lawsuit is remanded to the trial court for further proceedings consistent with this opinion. Costs on appeal are awarded to Kyung.


### *NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS*


HEESEMAN, J.[*]

WE CONCUR:


KLEIN, P. J.


CROSKEY, J.

---

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.