NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

FEB 26 2019

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| TEMECULA OAKS PARTNERS LP, Appellant, v. RICHARD M. PACHULSKI, Chapter 11 Trustee and UNITED STATES TRUSTEE, Appellees. | No.  17-55760 D.C. No. 8:15-cv-01943-JAK MEMORANDUM[*] |

Appeal from the United States District Court
for the Central District of California
John A. Kronstadt, District Judge, Presiding

Argued and Submitted November 8, 2018
Pasadena, California

Before:  RAWLINSON, MELLOY,[**] and HURWITZ, Circuit Judges.

Temecula Oaks Partners, LP ("Temecula") asserted a claim in Randall

Blanchard's Chapter 11 bankruptcy proceeding based on a purported guaranty of

the debt of Twelve Oaks, LLC.  The bankruptcy court determined Blanchard had

---

[*]  This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]  The Honorable Michael J. Melloy, United States Circuit Judge for the U.S. Court of Appeals for the Eighth Circuit, sitting by designation.

instead guaranteed the debt of a different entity, Desert Highlands, LLC, and that the settlement of the lender's previous bankruptcy proceeding in Nevada released the guaranty. Based on these determinations, the bankruptcy court disallowed Temecula's claim in full. The district court affirmed, and this appeal followed.

In the bankruptcy setting, as a second reviewing court, we review the district court de novo. Rains v. Flynn (In re Rains), 428 F.3d 893, 900 (9th Cir. 2005). We review the bankruptcy court's conclusions of law de novo but its findings of fact for clear error. Id. Here, the disputed issues relate to the interpretation of loan documents, a written settlement agreement, and a written guaranty. In general, the interpretation of written contracts is a matter of law subject to de novo review. Flores v. Am. Seafoods Co., 335 F.3d 904, 910 (9th Cir. 2003).

1. Blanchard expressly guaranteed a $4.95 million loan to Desert Highlands. That loan arose from a complicated multi-party transaction and was used to fund: (1) a loan of $3.75 million to Twelve Oaks; (2) an interest account of approximately $1 million for payment of interest to the lender; and (3) an origination fee of approximately $200,000 for the lender. Desert Highlands gave a $4.95 million note to the lender; Twelve Oaks gave a separate $3.75 million note to the same lender. Each entity provided separate collateral for its respective loan and acknowledged that the lender's total disbursement was $4.95 million.

Temecula purports to hold rights related to the Twelve Oaks Loan. It does

not argue that Blanchard signed a guaranty specifically and expressly identifying the Twelve Oaks Loan as the subject of the guaranty. Rather, it contends that Blanchard's guaranty of the Desert Highlands Loan implicitly covered the Twelve Oaks Loan due to the relationship between those two loans and the wrap-around nature of the Desert Highlands Loan.

Temecula's argument is contrary to the plain language of the guaranty and would require us to ignore the parties' careful structuring of a complicated, multi-party transaction in which separate entities served separate purposes, signed separate notes, and provided separate and respective collateral for their individual debts. The guaranty designates Nevada law as controlling. In Nevada, "[t]he objective of interpreting contracts is to discern the intent of the contracting parties. Traditional rules of contract interpretation are employed to accomplish that result. This court initially determines whether the language of the contract is clear and unambiguous; if it is, the contract will be enforced as written." Am. First Fed. Credit Union v. Soro, 359 P.3d 105, 106 (Nev. 2015) (en banc) (citations and quotation marks omitted).

Blanchard's written guaranty, using expressly defined terms, states: "Guarantor [Blanchard] hereby unconditionally guaranties the payment, when due, of the indebtedness of Borrower [Desert Highlands] to Lender or its order evidenced by the Note [the Desert Highlands Note] or any other Loan Document."

Temecula argues the phrase "any other Loan Document" extends the guaranty to cover the Twelve Oaks Loan because the "Loan Documents" include documentation of the Twelve Oaks Loan. Read naturally, however, the guaranty's reference to "any other Loan Document" is merely a reference to documents that evidence the Desert Highlands Loan. The plain language of the guaranty must prevail. Am. First Fed. Credit Union, 359 P.3d at 106.

2. Even if Blanchard's guaranty could be interpreted as covering the Twelve Oaks Loan, the settlement agreement from the lender's bankruptcy proceeding in Nevada specifically identified and released the Desert Highlands Loan and Blanchard's guaranty. The settlement agreement expressly "release[d] . . . the Blanchard Parties . . . from any and all obligations, duties, covenants and responsibilities under the Blanchard Loans (except as provided under subsections 2.5 and 2.6 below) and the Blanchard Guarantees." The settlement agreement specifically listed the Desert Highlands Loan as one of the "Blanchard Loans."

Temecula argues the settlement agreement lacked approval from the Nevada bankruptcy court, lacked certain required investor approvals, and did not actually release the Desert Highlands Loan or any related guarantees. But, the settlement agreement plainly provides that the Desert Highlands Loan was released. The record from the Nevada bankruptcy demonstrates the required investor and court approval.

17-55760

Finally, Temecula cites an affidavit from an attorney who purportedly represented the lender in negotiations for the settlement agreement. But, that affidavit contradicts the written settlement agreement. In California, whose laws the settlement agreement designates as controlling, such evidence cannot supersede or defeat the plain language of written agreement. <u>See</u> <u>Riverisland Cold Storage, Inc. v. Fresno-Madera Prod. Credit Ass'n</u>, 291 P.3d 316, 318 (Cal. 2013) ("The parol evidence rule . . . provides that when parties enter an integrated written agreement, extrinsic evidence may not be relied upon to alter or add to the terms of the writing.").

**AFFIRMED.**